UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RAUL A. SANTOS-SANCHEZ,                       :
                                                                   :   ORDER AFFIRMING SOCIAL
                                                                   :   SECURITY ADMINISTRATION
                                                                   :   AND DISMISSING COMPLAINT
                                                                   :
                                   Plaintiff,         :   09 Civ. 1437 (AKH)
                                                                   :
                                                                   :
             -against-                                      :
                                                                   :
MICHAEL J. ASTRUE,                                 :
Commissioner of Social Security,             :
                                                                   :
                               Defendant.      :
-------------------------------------------------------X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Raul A. Santos-Sanchez appeals from the final decision of the Social Security Administration ("SSA") that disallowed his claim of total disability since March 15, 2002. After full review, I hold that there is substantial evidence in the record supporting the findings of the SSA, I grant defendant's motion, and I deny plaintiff's motion, for judgment on the pleadings, and I grant judgment dismissing the complaint.

I. FACTUAL AND PROCEDURAL BACKGROUND

A.       FACTUAL BACKGROUND

        Plaintiff was born in the Dominican Republic on April 10, 1963. (Tr. 52.) He completed ten years of school in the Dominican Republic and speaks, writes and reads Spanish. (Tr. 61, 465.) He cannot read or write English, but speaks "a little" English. (Tr. 465, 720.) He is 5'3" and weighs 160 pounds. (Tr. 475.)

Plaintiff moved to the United States in approximately 1987. (Tr. 465, 720.) He lives in New York City with his wife and three children on the second floor of a "walk-up" apartment building. (Tr. 78, 470, 476, 720.) He travels usually by subway. (Tr. 476, 729.)

From July 1989 through March 2002, he worked as a general helper in a candy factory. (Tr. 62.) The job involved cleaning the factory, cooking, packing, lifting, and carrying boxes of candy that weighed between 40 to 100 pounds. He spent most of the day standing and walking. (Tr. 62, 466, 721.)

In 1999, plaintiff "started to have lower back pain." (Tr. 116.) On October 29, 2001, Dr. Xiao-Ke Gao, a psychiatrist and neurologist began treating him. (Tr. 131.) She diagnosed him with: (1) lumbar dorsal derangement with traumatic myofascitis (inflamation of a muscle and its fascia [band of fibrous tissue]); (2) lumbar radiculopathy (disease of the nerve roots); and (3) lumbar disc herniation, and prescribed medication and physical therapy. She determined that plaintiff was partially disabled from his "regular" job and she instructed him to avoid lifting more than 20 pounds. (Tr. 132.) However, plaintiff continued to work full time.

On March 8, 2002, plaintiff again saw Dr. Gao. Dr. Gao determined that plaintiff now was totally disabled from his regular job. A week later, on March 15, 2002, plaintiff stopped working. (Tr. 52, 62, 145.) He was then 39 years old.

In 2002, plaintiff claimed disability benefits from the Workers' Compensation Board. At an April 8, 2005 hearing, the Board found him to be permanently partially disabled. Plaintiff settled his claim for $55,000. (Tr. 597-600.)

B. MEDICAL EVIDENCE

    1.    Dr. Eduardo Belandria

In an August 20, 2003 report, Dr. Belandria, a physical medicine and rehabilitation physician, stated that he had been treating plaintiff monthly since May 10, 2001. (Tr. 91.) Dr. Belandria took an MRI of plaintiff on October 17, 2001. The August 2003 report stated that plaintiff suffered from chronic lower back pain syndrome and a herniated disc at lumbar spine L3-L4, resulting in painful range of motion. (Tr. 91-92.) However, Dr. Belandria's clinical findings showed positive straight leg raising, no atrophy, and positive pinprick sensation at L3-L4, conditions that were not consistent with plaintiff's complaints. (Tr. 92.) Dr. Belandria determined that plaintiff could occasionally lift fifteen pounds, stand and/or walk less than two hours per day, sit less than six hours per day, and had limited ability to push and pull. (Tr. 93-94.)

Although Dr. Belandria's August 2003 report stated that he had seen plaintiff monthly since May 2001, he produced only two treatment notes, both from October 2001, in response to a subpoena requesting all his medical records. (Tr. 242-43.)

    2.    Dr. Xiao-Ke Gao

Dr. Gao treated plaintiff for lower back and leg pain monthly or bimonthly between October 29, 2001 and July 2007. (Tr. 98-121, 130-55, 158-204, 269-326, 445-48, 453-54, 672-93.) As discussed above, Dr. Gao, after her October 29, 2001 examination, indicated that plaintiff's "motor and neuromuscular examination show[ed] full strength, 5/5, and no atrophy or fasciculation," and that plaintiff's gait was normal, although he complained that he was unable to walk on his toes or heels. (Tr. 131-32.) She reported that plaintiff was able to tandem walk and had a negative Romberg's sign,

3

but was not able to raise his legs more than 40 degrees.  Dr. Gao found plaintiff to be partially disabled for his job.

In March 2002, after additional examinations, Dr. Gao found that plaintiff was totally disabled.  She indicated that plaintiff suffered from total disability on Workers' Compensation forms beginning that month.  (Tr. 158-204.)

Over the years, plaintiff's symptoms showed a certain deterioration of his condition.  Dr. Gao's reports described that plaintiff had decreased sensation to pinpricks and to light touch in his left L4 dermatome, decreased range of motion in lumbar flexion, difficulty with sitting and standing for prolonged periods of time and straight leg raising limited to 30 degrees.  Plaintiff's gait continued to be normal but, by March 27, 2003, he began to walk with a cane.  He refused Dr. Gao's recommendation of surgery.  Two epidural injections did not seem to resolve the pain.  On the basis of this evidence, on July 24, 2003, Dr. Gao reported to the New York State Office of Temporary and Disability Assistance that, in her opinion, plaintiff had the ability to stand and/or walk for less than two hours per day, sit for less than six hours per day, and push and/or pull fifteen pounds.  (Tr. 118.)

In October 2004, plaintiff told Dr. Gao that he had stopped using his cane, but had difficulty walking, "specifically if he attempts to walk fast."  (Tr. 325.)  Dr. Gao completed a second questionnaire about plaintiff's condition on May 3, 2005, reporting, inconsistently, that plaintiff could sit for less than six hours in an eight-hour day, but also that he could sit without interruption for eight hours.  (Tr. 447.)

On August 2, 2005, Dr. Gao completed a third questionnaire regarding plaintiff's abilities to perform work-related activities.  (Tr. 453-54.)  She reported that

4

plaintiff could (a) occasionally lift and carry five to eight pounds, (b) stand and walk for a total of less than two hours in an eight-hour day, (c) sit for a total of less than six hours, (d) sit without interruption for one to two hours, and (e) never climb, stoop, or crouch. She also reported that his ability to reach, handle, feel, and push/pull were affected by his impairment.  (Tr. 453-54.)  On August 15, 2005, plaintiff told Dr. Gao that he was unable to walk on his toes and heels due to back pain.  (Id.)

In May 2006, plaintiff took a second MRI.  Dr. Gao found "no significant difference" between the first set of observations, made by Dr. Belandria in October 2001, and the second MRI of May 2006.  Dr. Gao wrote:

> I again reviewed the MRI of the L spine that [is] consistent only with the L3-4 left foraminal herniated disc with foraminal stenosis, and facet joint hypertrophy at L3-L4 level on the left. . . .  Comparison between old and new MRI of the L spine was made . . . and it demonstrated no significant difference between the two studies.

(Tr. 684.)  Dr. Gao reported that plaintiff's gait continued to be within normal limits.

Plaintiff complained, however, that the pain from his back had increased, especially with prolonged walking, playing with his son, sitting, and standing.  (Tr. 685.) He was given a motor and neuromuscular examination.  The tests showed that plaintiff had full strength, 5/5, normal gait, and normal deep tendon reflexes, which were 2+ throughout, but also that he had tenderness of the paraspinal lumbar muscle.  (Id.)  Again, in response to plaintiff's complaints, Dr. Gao, in June 2007, recommended surgery, and again plaintiff refused.  (Tr. 691.)

In September 2007, Dr. Gao was asked by the Administrative Law Judge presiding over plaintiff's case to explain the inconsistency between her May 2005 opinion that plaintiff could sit for eight hours without interruption and her August 2005

opinion that he could sit only for one to two hours without interruption, and to express an opinion regarding whether plaintiff could perform the physical requirements of sedentary work. (Tr. 692-693.) Dr. Gao did not respond to the ALJ's letter. (Tr. 559.)

    3.    Dr. Scott A. Jones

From May 2002 through October 2002, Dr. Scott A. Jones, a physical medicine and rehabilitation physician, treated plaintiff for his lower back pain. Dr. Jones found no atrophy, 5/5 strength in upper extremities, and 4/5 strength in lower extremities, normal symmetrical deep tendon reflexes at 2+, and no Babinski or Hoffmann reflexes.[1] From these observations and others, Dr. Jones diagnosed plaintiff's condition as lumbar sprain with traumatic myofascitis and signs of radiculopathy on the left side, and a herniated disc in the lumbar spine. Dr. Jones treated plaintiff with trigger point injections. (Tr. 283-84)

    4.    Dr. Robert Hyman

On February 25, 2003, Dr. Robert Hyman, an orthopedic surgeon, conducted an independent medical examination of plaintiff. (Tr. 225-239.) Plaintiff arrived with a cane and with a limp on his left side. He claimed to be able to take only a few short steps without his cane. However, plaintiff was able to raise his right leg 90 degrees, and his left leg 70 degrees, albeit with pain, to extend his legs from the examination table without apparent pain, and to bring his head down to his flexed knees. Dr. Hyman concluded that plaintiff's complaints of pain were disproportionate to his apparent lack of distress from these tests. He determined that plaintiff suffered a sprain

---

[1] A Babinski reflex is an "extension of the great toe and abduction of the other toes instead of the normal flexion reflex to plantar stimulation, considered indicative of pyramidal tract involvement." Stedman's Medical Dictionary (27th ed. 2000). A Hoffmann reflex is a "flexion of the terminal phalanx of the thumb and of the second and third phalanges of one or more of the fingers when the volar surface of the terminal phalanx of the fingers is flicked." Id. The presence of either reflex indicates an abnormality.

6

of his lumbosacral spine, and that he should be able to return to work with restrictions on repetitive lifting of more than ten to twenty pounds at a time. Dr. Hyman diagnosed plaintiff with a "mild, partial, causally-related work disability." (Tr. 229-30.)

Dr. Hyman examined plaintiff again on June 9, 2003. Noting full ranges of motion to his spine and shoulders, ample straight leg raising, ability to sit upright and to get off the examination table and dress himself, Dr. Hyman reported findings and opinions substantially similar to those of his prior examination. Plaintiff was non-cooperative in connection with a third examination on May 6, 2004.

5.   Dr. Warren Elliot Cohen

Dr. Warren Elliot Cohen, a neurologist and psychiatrist, testified as a medical expert at the July 19, 2005 and October 10, 2007 hearings. (Tr. 440-44, 477-486, 730-37.) He reviewed all of the medical evidence in the record and heard plaintiff's testimony. (Tr. 477, 730.)

At the 2007 hearing, Dr. Cohen testified that since March 2002, plaintiff's medically determinable impairment was discogenic disease of the lumbar spine, which was treated conservatively with analgesics, anti-inflammatories, muscle relaxants, physical therapy, epidural steroid injections and nerve sleeve injections. (Tr. 731.) He said that although plaintiff had an underlying identifiable problem with his spine, he did not have a listings level impairment. (Id.) Moreover, he found that plaintiff's subjective allegations of functional limitations were out of proportion to the objective medical findings. (Tr. 731-32.)

With respect to plaintiff's residual functional capacity, Dr. Cohen found that plaintiff could: (1) lift and carry twenty pounds occasionally and ten pounds frequently;

7

(2) stand and/or walk for two hours in an eight hour work day; (3) sit for six hours in an eight hour work day; and (4) occasionally kneel, crawl, and crouch.  (Tr. 732.)  Dr. Cohen said that he did not agree with Dr. Gao's functional assessments because they were not supported by her own clinical findings.  (Tr. 733.)

      6.      Other Doctors

The record describes numerous other medical examinations of plaintiff, by Dr. Vadim Kushnerik, by Dr. Jeffrey A. Goldstein, by Physical Therapist Jason Mendoza, by New York Neuro and Rehab Center, and by Dr. Alberto Comas Espinal.  These do not add materially to the information already described.

C.      PROCEDURAL BACKGROUND

On June 20, 2003, plaintiff filed an application for disability insurance benefits with the Social Security Administration.  On September 17, 2003, his application was denied, and he requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff was assisted by counsel and an interpreter.  He claimed that he became disabled as of March 15, 2002 due to back problems.

Plaintiff testified that he had worked from 1989 through March 2003 as a general helper in a candy factory, that the last day he worked was March 15, 2002, and that he did not perform any work, either on the books or off the books, since that date.  He testified that he stopped working due to constant and severe back and left leg pain that radiated down to his foot, that he can sit for 15 minutes and stand in one position for 15 to 20 minutes before he becomes uncomfortable, that he is able to walk half a block before he has to stop and rest, the he can lift and carry less than five pounds, that he has difficulty getting dressed and can no longer wash dishes, play dominos, walk with friends

8

or attend church, and that he spends his days watching television, laying down and sleeping.

In a decision dated August 24, 2005, the ALJ found that plaintiff was not disabled. (Tr. 25.) He determined that plaintiff had L3/4 disc herniation and mild lumbar radiculopathy, which were severe impairments. However, those impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P of Regulations No. 4. He further found that plaintiff's allegations regarding the degree of his limitations were not totally credible and that some of his symptoms could not be reasonably expected to arise from his proven impairments. The ALJ determined that plaintiff could: (1) sit for up to six hours in an eight hour work day; (2) stand or walk for up to two hours; and (3) occasionally carry up to ten pounds. He also found that plaintiff is limited to work that is simple, routine, and requires low levels of concentration and that plaintiff can no longer perform his past relevant work, but that he could perform a significant range of sedentary work, such as jewelry assembler, bench hand and surveillance system monitor.

On November 8, 2006, plaintiff appealed to the district court. By stipulation and order dated March 15, 2007, the case was remanded to the SSA for further administrative proceedings. (Tr. 585-586.)

On July 7, 2007, the Appeals Council vacated the Commissioner's August 24, 2005 decision and remanded the case to an ALJ for further proceedings. The Appeals Council directed that at a new hearing, the ALJ should: (1) address the medical reports of treating physician Dr. Scott A. Jones; (2) explain the weight accorded to treating physician Dr. Eduardo Belandria's findings and opinions; (3) seek clarification of treating

9

physician Dr. Xiao-Ke Gao's functional assessment findings; (4) give no weight to consultative orthopedist Dr. Mohammad Khattak's opinions, whose reliability as an expert in social security proceedings had been questioned; and (5) give further consideration to plaintiff's 2005 work activity.  (Tr. 583-84.)

On October 10, 2007, the ALJ held a second hearing, again attended by plaintiff, his lawyer, and an interpreter.  Plaintiff testified again, consistently with his prior testimony.  Elaborating on how he spent his days, he testified that he watched television, stood and sat in his apartment, went to doctor and physical therapy appointments, socialized with friends and neighbors, and went to church every Sunday a block from his home.   He testified that he went outside three times per day and traveled by walking or using public transportation.  (Tr. 729-30.)

Ms. Fass Karlin, a vocational expert, testified as to the jobs available to a person similarly situated to plaintiff, one with the same age, education and work experience.  (Tr. 737-41.)  She testified that a person capable of sedentary work, with the ability occasionally to kneel, crouch, crawl and carry up to ten pounds, could work as a bench hand, a jewelry assembler, or a surveillance system monitor.  (Tr. 737-738.)  If the person could perform light work, lift and carry ten pounds frequently and twenty pounds occasionally, and could sit for six hours and stand/walk for two hours, he could perform work as an assembler of small products.  (Tr. 738-39.)  However, if the person was illiterate in the English language, and was limited to carrying four to five pounds, standing or walking less than two hours a day, and sitting less than six hours a day, he would be unable to find work.  (Tr. 740-41.)

By order dated October 24, 2007, the ALJ addressed the issues that the Appeals Counsel raised and again determined that plaintiff was not disabled. (Tr. 551-565.) He found that plaintiff suffered discogenic disease of the lumbosacral spine with mild radiculopathy, a "severe impairment" under the regulations, that plaintiff's impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, that plaintiff's subjective complaints were out of proportion to the clinical findings and that plaintiff was not fully credible; that plaintiff has the residual functional capacity to occasionally lift/carry up to ten pounds, sit for six hours in an eight hour work day, stand and/or walk for a total of two hours in an eight hour work day, and engage in simple, routine work activity that requires low levels of concentration; that plaintiff is unable to perform any of his past relevant work, has a limited education and is unable to communicate fully in English, and that plaintiff has the residual functional capacity to perform a significant range of sedentary and a narrow range of light work that is available in the community. (Tr. 563-64.)

The Appeals Council declined to assume jurisdiction and the decision of the ALJ, on January 24, 2009, became the Commissioner's final decision. (Tr. 490-493.)

On February 18, 2009, plaintiff appealed the decision to this court. Both parties moved for judgment on the pleadings.

II. DISCUSSION

The Court's review "is limited to inquiring into whether the [Commissioner's] conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997), quoting Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). "A finding

11

is supported by substantial evidence if a reasonable mind might accept that evidence as adequate to support the conclusion." Johnson v. Astrue, 324 Fed. Appx. 57, 58 (2d Cir. 2009), citing Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

In evaluating a disability claim, the Social Security regulations require the Commissioner, through the ALJ, to apply a five-step process:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999), quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the date of his alleged onset of disability. (Tr. 564.) At Step Two, he found that plaintiff's "discogenic disease of the lumbosacral spine with mild radiculopathy" is a severe impairment under the regulations. (Id.) At Step Three, he found that this impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Id.) At Step Four, he found that plaintiff was precluded from performing any of his past relevant work. (Id.) Finally, relying on the testimony of Ms. Fass-Karlin, he determined that plaintiff has the residual functional capacity to perform a "significant range of sedentary and a narrow range of

light work," such as that of a jewelry assembler, a bench hand, a surveillance system monitor, or a small products assembler. (Id.)

Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not give "controlling weight" to the findings of plaintiff's treating physicians.

Generally, a treating source's opinion is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. 404.1527(d)(2); Arruda v. Commissioner, 363 Fed. Appx. 93 (2d Cir. 2010); Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999).

The ALJ expressly discounted the opinions of plaintiff's treating physicians because they lacked credibility, were unsupported by the physician's treatment record, and gave little insight into plaintiff's residual work capacity.

For example, Dr. Gao, on whose opinions plaintiff places much emphasis, gave two contradictory opinions only three months apart. In May 2005, she reported that Plaintiff could sit uninterrupted for eight hours but, in August 2005, she stated that he could do so for less than only two. When the ALJ requested a clarification of the contradiction she did not provide one. She also failed to respond to the ALJ's request for her opinion regarding whether plaintiff could perform sedentary work. Moreover, Dr. Gao made inconsistent statements in a single report. She stated in the May 2005 report that plaintiff could sit for a total of six hours a day but that he could sit uninterrupted for eight hours. Finally, Dr. Cohen, who examined all of plaintiff's medical records and testimony, testified at the hearing that Dr. Gao's opinions were not justified by her own

13

clinical test results. Dr. Gao's contradictions and failure to provide clarification gave the ALJ good reason to disregard her opinion.

The ALJ disregarded Dr. Belandria's opinion because his medical records indicated that he last treated plaintiff five months before the alleged onset date of plaintiff's injury. The ALJ properly determined that Dr. Belandria thus had no basis for an opinion regarding plaintiff's residual functional capacity at any time relevant to plaintiff's claim. Moreover, the contradiction between Dr. Belandria's August 2003 report, indicating that he had treated plaintiff monthly since May 2001, and his medical records, showing only two treatment dates, both of which occurred in October 2001, raised legitimate doubts about Dr. Belandria's credibility.

With respect to Dr. Jones and Dr. Comas Espinal, the ALJ properly determined that their reports were based on limited periods of time and thus gave little insight into plaintiff's residual functional capacity. Dr. Jones last examined plaintiff on October 2002, only seven months after the alleged onset date of plaintiff's disability. His report of plaintiff's injuries thus reflected only a short period of the time relevant to the ALJ's determination. Dr. Comas Espinal did not begin treating plaintiff until 2007 and his opinion was thus too recent to carry significant weight.

The ALJ gave substantial weight to Dr. Cohen's opinion. Although Dr. Cohen was not a treating physician, the substantial weight accorded his opinion was appropriate. State agency medical consultants are considered "highly qualified physicians . . . who are also experts in Social Security disability evaluations." 20 C.F.R. § 404.1527(f)(2)(I); see also Riley v. Astrue, 2008 WL 2696259, at * 17 (S.D.N.Y. July 7, 2008). Moreover, their opinions may override the opinions of treating sources,

"provided they are supported by evidence in the record." Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (citing 20 C.F.R. §§ 404.1572(f), 416.927(f)). Dr. Cohen based his opinion on careful consideration of all the medical evidence in the record. The opinion of Dr. Hyman, an orthopedic surgeon who conducted several independent examinations beginning in 2003, supported Dr. Cohen's testimony. Dr. Hyman had concluded that plaintiff suffered only a mild partial disability and could return to work so long as there were restrictions on his lifting of more than ten to twenty pounds at a time. The record supports the ALJ's reliance on Dr. Cohen's opinion and his determination regarding plaintiff's disability.

There is substantial evidence in the record to support the ALJ's conclusion and his decision to discount the opinions of plaintiff's treating physicians.

III. CONCLUSION

Accordingly, I grant the Commissioner's motion for judgment on the pleadings and deny plaintiff's motion for judgment on the pleadings. The Clerk shall mark the motion (Doc. No. 9) as terminated and the case as closed.


SO ORDERED.

Dated:   July 15, 2010
         New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge

15